Case 4:20-cv-01981   Document 239   Filed on 07/14/22 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
July 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ZELMA M. LOEB-DEFEVER, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-1981 |
| § | |
| STRATEGIC CONSTRUCTION, LTD. § | |
| d/b/a FCI MULTI-FAMILY, *et al.*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM OPINION AND ORDER

This is a copyright infringement case brought by an architecture firm against a multitude of defendants that were involved in the development of a senior living facility called Woodhaven Village. In their live complaint, the plaintiffs—Zelma Loeb-Defever ("Loeb-Defever") and her company, Loeb Architects, LLC (collectively "Loeb")—sued 24 defendants under 17 U.S.C. § 501 for copyright infringement and under 17 U.S.C. § 1202 for violating the Digital Millennium Copyright Act. (Dkt. 96 at pp. 1–11, 49–52). Loeb also sued Defendant Padua Realty ("Padua") for breach of contract. (Dkt. 96 at pp. 52–53).

The Court has dismissed Loeb's claims brought under 17 U.S.C. § 501 and 17 U.S.C. § 1202. (Dkt. 223). The sole claim remaining in the case is Loeb's claim against Padua for breach of contract. Padua has moved for summary judgment on that claim, and Padua's motion (Dkt. 230) is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court fully set out the relevant facts of this case in its prior opinion dismissing Loeb's copyright claims and here will repeat only the facts that are necessary to its discussion of Loeb's breach of contract claim. Loeb's lawsuit arises out of the development of a senior living facility in Conroe, Texas called Woodhaven Village. In 2011, Loeb and Padua entered into two contracts whereby Loeb performed preliminary design work on two sections of Woodhaven Village in exchange for $10,800.00. (Dkt. 159-2; Dkt. 159-3). Prior to execution of the contracts, Loeb had sent Padua a bid to handle all design work on Woodhaven Village for $232,000.00, but Padua did not accept that bid. (Dkt. 159-4 at p. 66; Dkt. 162-20 at p. 2).

The contracts outlined seven phases of development for the two Woodhaven Village sections. (Dkt. 159-2 at p. 2; Dkt. 159-3 at p. 2). The contracts specifically said that Padua was only hiring Loeb for "Phases One and Two[,]" which the contracts defined as "Code Research, Site Diagnostics, Building Design Parameters, plus Schematic Building, Site Design, and with Exterior Elevation." (Dkt. 159-2 at p. 2; Dkt. 159-3 at p. 2). Phases one and two, according to the contracts, comprised roughly 10% of the total design work on the projects. (Dkt. 159-2 at p. 2; Dkt. 159-3 at p. 2). The contracts did not require that Loeb agree to or be compensated for the use of its documents to complete design phases three through seven of the projects, and the contracts did not require Padua to hire Loeb for design phases three through seven of the projects. (Dkt. 159-2 at p. 6; Dkt. 159-3 at p. 6).

Loeb-Defever testified that her company provided the schematics as required by the contracts. (Dkt. 159-4 at pp. 66, 71). Padua paid Loeb the full $10,800.00 contract price for design phases one and two of the Woodhaven Village projects. (Dkt. 159-2 at p. 3; Dkt. 159-3 at p. 3; Dkt. 159-4 at p. 26). Padua then hired a different architectural firm, Defendant Ted Trout Architects, Ltd. ("Trout"), to handle the subsequent design work. (Dkt. 160-1 at p. 26; Dkt. 162-10 at p. 11; Dkt. 162-20 at p. 2).

Loeb filed this lawsuit after Loeb-Defever learned from an acquaintance that Padua had hired Trout and that Trout had drawn up plans for the Woodhaven Village projects. (Dkt. 159-4 at pp. 55–57, 129–35). When the acquaintance sent Loeb-Defever a copy of the Trout plans, Loeb-Defever compared the Trout plans to her own and concluded that her plans had provided a "starting point" for the Trout plans. (Dkt. 159-4 at pp. 55–57, 129–35, 137–39).

Loeb pleads that Padua breached four separate provisions of the Loeb/Padua contracts. Loeb's description of Padua's breaches is somewhat light on detail; it comprises only one short paragraph of Loeb's 55-page live complaint, with the balance of the complaint devoted to Loeb's now-dismissed copyright claims. In its entirety, the breach-of-contract paragraph reads:

> Padua Realty has failed to comply with the 2010 agreement and the 2011 agreement in at least the following respects:
>
> - it did not "Furnish" to Loeb Architects "and coordinate services of those Consultants," in particular, Trout, "not included in the Scope of Services."
>
> - it did not "Acknowledge the professional services provided by the Architect (e.g., publications, renderings, and other news releases)."

- it did not "consult with Architect prior to release of advertising/document for required copyright and legal verbiage notations."

- it did not "inform Architect of all information known to Owner about the site or building that otherwise may affect either the Architect's performance of [sic] their contractual obligations."

Dkt. 96 at pp. 48–49.

Loeb's description of its breach-of-contract damages is equally sparse; Loeb's complaint simply claims that Padua's alleged breaches "caused damages to Loeb Architects." (Dkt. 96 at p. 49). Loeb has not pled lost profits or any other specific measure of breach-of-contract damages. (Dkt. 96 at pp. 49, 53).

Padua has moved for summary judgment on the damages element of Loeb's breach of contract claim, contending that "Loeb has no evidence of breach of contract damages and that Loeb did not disclose a theory, basis or amount for damages during the discovery period for this case for the two allegedly breached contracts." (Dkt. 230 at p. 8; Dkt. 234 at p. 7). Fact discovery closed in this case over a year ago, on May 24, 2021. (Dkt. 137).

## II. SUMMARY JUDGMENTS

Padua has moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Celotex*, 106 S. Ct. at 2553). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075. If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id.* The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 106 S. Ct. 1348, 1356 (1986).

Generally, in reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S. Ct. 2097, 2110 (2000). That said, however, the court resolves factual controversies in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075. "Such facts must consist of more than conclusional allegations and denials, speculation,

improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 348 (5th Cir. 2012) (brackets and quotation marks omitted); *see also Little*, 37 F.3d at 1075 ("[The nonmovant's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotation marks and citations omitted). "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075 (emphasis removed).

Furthermore, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Id*.

### III. ANALYSIS

Padua has moved for summary judgment on the damages element of Loeb's breach of contract claim, contending that "Loeb has no evidence of breach of contract damages and that Loeb did not disclose a theory, basis or amount for damages during the discovery period for this case for the two allegedly breached contracts." (Dkt. 230 at p. 8; Dkt. 234 at p. 7). In response, Loeb points out that "there is a distinction between the necessity for proof of legal damage and proof of the amount thereof and, while uncertainty as to existence of legal damages is fatal to recovery, uncertainty as to the amount is not." (Dkt. 232 at p. 6). Loeb argues that Padua's summary judgment motion

equates the amount of damages to the fact of damages and that Loeb only needs proof of the latter to establish a triable issue of fact. (Dkt. 232 at p. 6). According to Loeb, proof that Padua's alleged contract breaches harmed Loeb exists in four places: (1) the joint pretrial order; (2) evidence that Padua breached the contracts; (3) Loeb's responses to interrogatories; and (4) the reports of two defense expert witnesses. (Dkt. 232 at pp. 6–7).

The Court disagrees with Loeb and will address each of its arguments in turn.

*A. Padua's statements in the joint pretrial order are not judicial or evidentiary admissions.*

First, Loeb contends that Padua judicially admitted in the joint pretrial order that Loeb suffered some damages in an as-yet-undetermined amount as a result of Padua's alleged contract breaches. (Dkt. 232 at pp. 7–9). In Loeb's words, Padua "is bound by its admissions in the joint pretrial order that there is a fact question on [Loeb's] damages for breach of contract." (Dkt. 232 at p. 7).

Loeb claims that Padua made its judicial admission through Contested Issue of Fact No. 107 of the joint pretrial order, which was "The amounts of any damages." (Dkt. 189 at p. 34; Dkt. 232 at p. 7). Loeb further claims that Padua conceded contract-breach-related harm to Loeb by saying in the joint pretrial order that Loeb's "damages are limited by [Loeb's] failure to mitigate" and that "[Loeb's] recovery of damages should bar" Loeb's claim for "a permanent injunction pursuant to 17 U.S.C. § 502 or otherwise." (Dkt. 189 at pp. 13–14; Dkt. 232 at p. 8). Loeb also points to Padua's proposed jury instructions, which include instructions and a question regarding damages for contract breaches. (Dkt. 189-7 at pp. 39–40; Dkt. 190-1 at p. 43; Dkt. 232 at pp. 7–8).

The Court disagrees with Loeb. "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001). Padua did not deliberately, clearly, and unequivocally concede in the joint pretrial order that Loeb suffered harm from Padua's alleged contract breaches. To the contrary, Padua explicitly contended in the joint pretrial order "that it did not breach its contracts with Loeb" and "that [Loeb] ha[d] no actual damages and ha[d] put forth no evidence of actual damages." (Dkt. 189 at p. 13). At most, Loeb has highlighted inconsistent statements in the joint pretrial order that can be analogized to alternative pleadings—Padua is clearly saying that its alleged contract breaches (the existence of which Padua also does not concede) caused no harm to Loeb but that *if the jury were to find* that its alleged contract breaches caused harm to Loeb, *then* the amount of damages would remain contested, the damages would be limited by Loeb's failure to mitigate them, the recovery of damages would bar the entry of a permanent injunction, and the jury should receive a properly worded question regarding damages.

"[C]ourts have generally recognized that pleadings made in the alternative do not constitute a judicial admission." *True Believers Ink 2, Corp. v. Russell Brands, LLC*, No. 4:18-CV-432, 2019 WL 4039888, at *2 (E.D. Tex. Aug. 27, 2019) (collecting cases); *see also Boulle, Ltd. v. De Boulle Diamond & Jewelry, Inc.*, No. 3:12-CV-1462, 2014 WL 4261994, at *7 (N.D. Tex. Aug. 29, 2014) ("Plaintiffs' statements in the Amended

Complaint and in the Joint Pretrial Order are not binding judicial admissions, given the inconsistent statements Plaintiffs provide in their answers."). "To be sure, where a party's pleadings are inconsistent—e.g., pled in the alternative—any 'admission' cannot be unequivocal." *True Believers*, 2019 WL 4039888 at *2. Accordingly, the statements from the joint pretrial order that Loeb highlights, which are essentially alternative pleadings, do not constitute judicial admissions by Padua.

For the same reasons, to the extent that Loeb is arguing that Padua's statements constitute evidentiary admissions, the Court also rejects that argument. *See Dartez v. Owens-Illinois, Inc.*, 910 F.2d 1291, 1294 (5th Cir. 1990) ("Procedural context may also prevent the use as admissions of statements made by a party in the trial court. For example, in a motion to transfer venue a defendant may make statements that are not concessions for all purposes, but merely operating assumptions which must be taken as true in order to resolve the collateral issue. Such statements should not later be regarded as an admission by the party.") (quotation marks, ellipsis, brackets, and citation omitted); *McNeese v. Reading and Bates Drilling Co.*, 749 F.2d 270, 274–75 (5th Cir. 1985) (holding that the district court did not abuse its discretion by refusing to treat as an evidentiary admission an interrogatory answer which was in the nature of an alternative pleading).

B. *Evidence of breach does not create a presumption of harm.*

Loeb next contends that "it is undisputed that [Padua] broke its contracts with Loeb[.]" (Dkt. 232 at p. 12). As a result, the argument continues, the Court must deny Padua's motion because "[i]t is settled law that the courts tend to find some way in which

damages can be proved and awarded where a wrong has been committed." (Dkt. 232 at p. 10).

The Court disagrees with Loeb. Even assuming that there is some evidence of a contract breach by Padua, cases interpreting Texas contract law give no indication that the law allows the Court to presume the existence of harm from the simple fact of breach. *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 335 F.3d 453, 465 (5th Cir. 2003) ("The plaintiff bears the burden of demonstrating that he suffered a loss as a result of the breach."). As the Sixth Court of Appeals of Texas has stated in an apt summary of the general law of damages in Texas breach-of-contract actions:

> the plaintiff in a breach of contract action must also demonstrate damages resulting from the breach.
>
> . . .
>
> It is a general rule of law that the victim of a breach of contract should be restored to the position it would have been in had the contract been performed. Determining that position involves finding what additions to the injured party's wealth have been prevented by the breach and what subtractions from its wealth have been caused by the breach. The measure of damages is just compensation for *the loss actually sustained.* The burden is on the complaining party to establish his right to recover compensatory damages by proving he suffered a pecuniary loss as a result of the breach. The burden is on the plaintiff to allege and prove the loss resulting from the alleged breach. Such loss must be established with a reasonable degree of certainty and cannot be left to speculation.
> *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 616–17 (Tex. App.—Texarkana 2002, pet. denied) (citations omitted; emphasis in *Taub*) (cited in *Sport Supply*).

Loeb has not shown how evidence of breach alone meets this standard here.

But what about nominal damages? Loeb mentions in one sentence of its summary judgment response that "Texas also allows nominal damages for breach of contract."

10 / 17

(Dkt. 232 at p. 25). However, Loeb's statement of the law is incomplete. Under Texas law, nominal damages "are for cases in which there are no damages, or none that could ever be proved." *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 665 & n.21 (Tex. 2009). "[I]n recent decades the rule in Texas has been that nominal damages are not available when the harm is entirely economic and subject to proof (as opposed to non-economic harm to civil or property rights)." *Id*. It is the plaintiff's burden to establish, through pleading and proof, that the case is one in which nominal damages are appropriate. *See Chehab v. First Service Credit Union*, No. 14-18-00969-CV, 2020 WL 5241060, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 3, 2020, no pet.) (affirming summary judgment on damages element of claim for breach of contract) ("Chehab first argues that Texas law recognizes nominal damages for breach of contract, presumably alleviating a requirement that Chehab produce evidence of damages. . . . Chehab has not pleaded for nominal damages for non-economic harm, such as harm to civil or property rights. Therefore, the fact that nominal damages can generally be recovered in a breach-of-contract action does not create a fact issue as to whether Chehab produced evidence of actual damages."); *Gulf Coast Investment Corp. v. Rothman*, 506 S.W.2d 856, 857–58 (Tex. 1974) (rejecting claim for nominal damages when evidence showed plaintiff suffered no economic damage) ("The court of civil appeals ruled that Rothman's proof that Gulf Coast breached its contract to give notice of delinquent accounts entitled Rothman at least to nominal damages. As we view the record, however, the trial court correctly ruled that Rothman take nothing. . . . The trial court correctly ruled that Rothman did not prove that he sustained any damages.").

Loeb did not plead for nominal damages and has not explained why the record establishes that such damages are available in this case. Loeb's entire discussion of the subject amounts to one sentence in a summary judgment response stating that Texas law sometimes allows nominal damages in breach-of-contract cases. That is not enough to avoid summary judgment on the damages element of a breach-of-contract claim. *Chehab*, 2020 WL 5241060 at *4–5.

C. *Loeb's interrogatory responses do not create a triable fact issue.*

Loeb next contends that evidence of its contract damages can be found in its answers to Padua's interrogatories. (Dkt. 232 at p. 16). Specifically, Loeb points to its answer to Padua's first interrogatory, which sought "the details including calculations of [Loeb's] best and most accurate belief, contention, estimate /or [sic] understanding of what [Loeb's] revenues and net income (i.e., revenues minus expenses) would have been had [Loeb] done all phases of the [Woodhaven Village design work]." (Dkt. 232 at p. 16; Dkt. 232-9 at p. 2). Loeb responded to Padua's first interrogatory with an estimate of the fees that Loeb would have charged for design phases three through seven of the Woodhaven Village project. (Dkt. 232 at pp. 16–17; Dkt. 232-9 at pp. 2–3). Loeb argues that this estimate creates a triable fact issue on breach-of-contract damages. (Dkt. 232 at pp. 16–20).

The Court disagrees. Estimates of the revenue that Loeb lost when Padua did not hire Loeb to complete design phases three through seven of the Woodhaven Village project are irrelevant. As the Court has previously explained both in its first summary judgment opinion and earlier in this opinion, the contracts that Padua and Loeb signed

unambiguously did not require Padua to hire Loeb for design phases three through seven, so Padua did not breach its contracts with Loeb by hiring someone else to complete those phases. In fact, Loeb did not even allege in its live complaint that Padua's hiring someone else was a breach of contract. Loeb has not presented any evidence tying its lost-revenue estimates (or any other harm) to any breach of the contracts, and Texas law requires Loeb to prove that connection. *Taub*, 75 S.W.3d at 617 ("The measure of damages is just compensation for *the loss actually sustained*. . . . The burden is on the plaintiff to allege and prove the loss resulting from the alleged breach.") (emphasis in *Taub*).

Loeb also asserts that its answer to Padua's first interrogatory creates a fact question on breach-of-contract damages because that answer is incorporated into Loeb's damage model for its copyright claims. Citing from a footnote in *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Casualty Co.*, 677 F.3d 250, 257 (5th Cir. 2012), Loeb argues that its allegations of copyright infringement constitute allegations of *per se* breach of the contracts between Loeb and Padua, making evidence of copyright damages necessarily probative of breach-of-contract damages. The Court disagrees. Leaving aside the question of whether Louisiana contract and insurance law provide any meaningful interpretive guidance here,[1] the Court has already concluded as a matter of law that there was no copyright infringement because Loeb granted both an express and an implied license to use its preliminary schematics. (Dkt. 223). So even if Loeb's *per-se*-contract-breach theory—which Loeb did not plead and is raising for the first time in response to

---

[1] In *Looney*, the Fifth Circuit addressed the question of whether a breach-of-contract exclusion precluded coverage under Louisiana insurance law.

Padua's summary judgment motion—is viable, the claim based on that theory fails because the record evidence conclusively establishes that there was no breach. Accordingly, the lost-revenue estimates outlined in Loeb's answer to Padua's first interrogatory do not relate to any extant claims and have no weight as summary judgment evidence. *Lexxus International, Inc. v. Loghry*, 512 F. Supp. 2d 647, 665–66 & n.14 (N.D. Tex. 2007) (granting summary judgment on the damages element of a breach-of-contract claim) ("Plaintiffs' references to evidence of damages stemming from Plaintiffs' product disparagement claim . . . are unavailing. The court has already determined that Loghry is entitled to judgment as a matter of law on Plaintiffs' product disparagement claim.").

Loeb's answer to Padua's first interrogatory does not create a triable fact issue.

*D. The expert opinions cited by Loeb do not provide evidence of breach-of-contract damages.*

Loeb's final contention is that evidence of breach-of-contract damages can be found in the reports of two defense experts, John Bone ("Bone") and Bryce Cook ("Cook") (Dkt. 232 at pp. 20–23). The Court disagrees.

Bone was retained by defendants who have been dismissed, and Cook was retained by Padua.[2] (Dkt. 232 at pp. 20–21). Loeb argues that the following passage from Bone's report provides evidence of breach-of-contract damages:

---

[2] Padua has objected to and moved to strike Bone's opinions on the basis that they are hearsay and that, given the dismissal of the parties that designated Bone, they are no longer admissible as statements made by a party opposed to Loeb. *See* Fed. R. Evid. 801(d)(2). (Dkt. 233 at p. 3). Padua further notes that Bone was not cross-designated as an expert and is not on Loeb's trial witness list. (Dkt. 233 at p. 3). Loeb notes that the 2010 revision to Federal Rule of Civil

> It is my understanding that Loeb provided architectural services in connection with the first two (of seven) phases, of the Woodhaven Development project. Plaintiff's actual damages are limited to the amount Loeb would have earned, less incremental costs, had she provided the architectural services for phases 3 through 7 of the Woodhaven Development.
>
> In October 2010, Loeb provided an architectural and interior fee estimate of $232,000 to Antonio Padua for all 7 phases of architectural services related to the Woodhaven Development. As Loeb was compensated $10,800 for work completed for phase 1 and phase 2, I concluded that the remaining fees for the subsequent phases, had she won the work, would amount to $221,200.
>
> . . .
>
> By applying [a] 17% profit margin to Loeb's expected revenues for phases 3 to 7, I determined that Loeb's actual damages would amount to as low as $37,113, which represents Loeb's expected profit for completing the remaining phases of the Woodhaven Development project.
> Dkt. 232 at p. 20; Dkt. 232-10 at pp. 3–4.

This passage does not help Loeb meet its burden. Again, estimates of the revenue and profits that Loeb would have earned had it been hired to complete Woodhaven Village are irrelevant. Padua did not breach the contracts when it hired someone other than Loeb to complete design phases three through seven of the Woodhaven Village project. Bone's report does not draw any connection between any breach of the contracts by Padua and any harm to Loeb. Bone's report, in fact, does not even mention the

---

Procedure 56 has relaxed that rule's once-rigid admissibility requirements. (Dkt. 235 at p. 3). Both parties raise strong points. Since the Court is not convinced that Bone's opinions should be excluded under the 2010 revision to Rule 56, the Court will overrule Padua's objections. *See Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("After a 2010 revision to Rule 56, materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence.") (quotation marks omitted; emphasis in *Maurer*).

contracts between Padua and Loeb—which makes sense, because the defendants who retained Bone were only sued for copyright infringement, not for breach of contract.

Similarly, Cook's report does not help Loeb. Loeb relies on the following passage from Cook's report:

> Loeb's actual damages, assuming infringement, are best measured by the compensation (e.g., implicit charge/markup, license fee, or reasonable royalty) she should have received from the Developer Defendants if they had used her design and drawings with her permission.
> Dkt. 232 at p. 21; Dkt. 232-13 at p. 4.

Neither this passage nor the rest of Cook's report creates a triable issue of fact. Although Cook mentions once in his report that Loeb "also claim[s] that . . . Padua . . . breached agreements with Loeb[,]" the report—as one can surmise from the "assuming infringement" language in the quote above—opines solely on "alleged copyright infringement damages in this matter[.]" (Dkt. 232-13 at p. 3). Cook's report does not mention any specific breach of the contracts, much less link any breach to any harm to Loeb. Moreover, as the Court has explained, Loeb's copyright infringement claims have been dismissed, so to the extent that Loeb argues that copyright infringement equates to breach of the parties' contract, the evidence conclusively establishes that there was no breach.[3]

---

[3] In addition to the expert reports, Loeb cites an excerpt of Loeb-Defever's deposition in which Loeb-Defever testified about how her business was damaged. (Dkt. 232 at p. 15). This testimony does not help Loeb carry its burden for the same reasons that Loeb cannot rely on the experts' reports: Loeb-Defever did not testify that any breach of the contracts caused the harm. When she described the harm to her business, the question to which Loeb-Defever responded was, "So what's your best understanding of how your business was damaged by what you contend to be the unauthorized use of your schematics at Woodhaven?" (Dkt. 232 at p. 15). The Court has concluded as a matter of law that there was no copyright infringement and, accordingly, no "unauthorized use" of Loeb's schematics.

The expert reports cited by Loeb do not provide evidence of breach-of-contract damages.

IV. **CONCLUSION**

Texas law requires Loeb to allege and prove the losses resulting from Padua's alleged breaches of the contracts between them. Loeb has not presented any evidence showing any connection between any breach of the contracts by Padua and any harm to Loeb. Padua's motion for summary judgment on Loeb's breach of contract claim (Dkt. 230) is **GRANTED**. Loeb's breach of contract claim is **DISMISSED WITH PREJUDICE**.

The Court will enter a separate final judgment.

SIGNED at Houston, Texas on July 14, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE